UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOMMY LEE JONES,

     Petitioner,

v.                             Case No. 8:20-cv-2357-WFJ-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

Tommy Lee Jones, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 15). Mr. Jones filed a reply. (Doc. 18). Upon consideration, the petition is **DENIED**.

## I.    Procedural History

A state-court jury convicted Mr. Jones of first-degree murder, attempted second-degree murder, and aggravated battery with a deadly weapon. (Doc. 15-2, Ex. 7). The trial court sentenced Mr. Jones to concurrent terms of life imprisonment for first-degree murder, thirty years' imprisonment for attempted second-degree murder, and fifteen years' imprisonment for aggravated battery. (*Id.*, Exs. 8, 13, 14). The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 18). Mr. Jones unsuccessfully sought postconviction relief under Florida Rule of Criminal Procedure 3.850, (*id.*, Exs. 25, 26), and the state appellate court *per curiam* affirmed the denial of relief, (*id.*, Ex. 30). Mr.

Jones also filed a petition alleging ineffective assistance of appellate counsel, which was summarily denied. (*Id.*, Exs. 21, 22). This federal habeas petition followed. (Doc. 1).

## II.    Facts; Trial Testimony

This case arises from Mr. Jones's fatal stabbing of his wife, Juanita Jones. The Joneses lived in Haines City, Florida with Mrs. Jones's three children (Joaquin Jackson, Floyd O'Hara, and Justin McCain), Mr. O'Hara's girlfriend (Arius Mitchell), and Mr. Jackson's father (Charles Bruce).[1] (Doc. 15-2. Ex. 5, at 435-36, 447).

On July 20, 2013, Mr. O'Hara arrived at the house at around 4:00 p.m. (*Id.* at 545). Mr. and Mrs. Jones were out; the other residents were home. (*Id.*) Mr. O'Hara called his mother "30 to 40 times," but she did not answer. (*Id.*) When the Joneses got home that evening, Mr. O'Hara asked Mrs. Jones why she had not answered his calls. (*Id.* at 547). She explained that Mr. Jones had thrown her cellphone "out the window" while they were driving. (*Id.*) Mr. O'Hara noticed that Mrs. Jones "was trying to keep her distance" from Mr. Jones, but he did not observe any "arguing" or "physical altercations" between the two. (*Id.* at 548).

Around 11:00 p.m., Mr. O'Hara told his mother that his "jaw hurt," so she decided to take him to a nearby Wal-Mart to buy medicine. (*Id.* at 549-51). As the two pulled out of the driveway and headed down the street, Mr. Jones ran behind the car. (*Id.* at 550). Mrs. Jones told Mr. O'Hara to "let him in," explaining that she did not want any "argument" or

---

[1] Mr. O'Hara and Mr. Jackson were adults at the time of the stabbing; Mr. McCain was seventeen years old. (Doc. 15-2, Ex. 5, at 446, 504, 542).

"fighting" because she planned to attend church the next day. (*Id.*) Mr. Jones got in the car, and three went to Wal-Mart. (*Id.*)

When they returned home, the Joneses retired to their bedroom, and Mr. O'Hara began to play a video game in the living room. (*Id.* at 558-59). Ms. Mitchell (Mr. O'Hara's girlfriend) was lying on a pull-out bed in the living room. (*Id.* at 412). At some point, Mrs. Jones left the bedroom and began cooking in the kitchen. (*Id.* at 559). Mr. Jones followed her to the kitchen, prompting Mr. O'Hara to "pause [his] game," but Mrs. Jones told her son, "[I]t's okay." (*Id.* at 561). As Mr. O'Hara was turning off the TV and the video game console, he heard his mother "make a noise." (*Id.*) Mr. O'Hara got up, ran to the kitchen, and saw Mr. Jones stabbing Mrs. Jones with a knife. (*Id.* at 563-64). Ms. Mitchell likewise observed Mr. Jones making a "swinging motion" toward Mrs. Jones with a "butcher knife." (*Id.* at 414-15).

Mr. O'Hara tried to help his mother; Mr. Jones responded by stabbing him in his left arm. (*Id.* at 564). Mr. O'Hara ran to the front door to get help, but before he could leave the house, Mr. Jones came up from behind, "cut" him with the knife, and "locked the door back." (*Id.* at 567, 569). Mr. O'Hara screamed, "[H]e stabbed mama." (*Id.* at 570). Hearing the commotion, Mr. Jackson (Mr. O'Hara's brother) jumped out of bed, ran to the living room, and saw Mr. Jones standing next to Mr. O'Hara with a knife in his hand. (*Id.* at 513-17). Mr. Jackson "charged" at Mr. Jones and, along with Mr. O'Hara, wrestled him to the ground. (*Id.* at 517). During the struggle, Mr. Jones stabbed Mr. Jackson "in the top of [his] head." (*Id.*) The brothers were ultimately able to subdue Mr. Jones and call 911. (*Id.* at 520).

3

By the time law enforcement and paramedics arrived, Mrs. Jones had passed away. (*Id.* at 379-80). The medical examiner who conducted the autopsy testified that Mrs. Jones had been stabbed nine times, that most of the wounds were "consistent with an assailant reaching around [] and stabbing her" from behind, and that Mrs. Jones "[m]ost likely" died from a stab wound to her "heart sac." (*Id.* at 482, 495-98). The only injury Mr. Jones sustained was a "laceration" between his "thumb and index finger." (*Id.* at 362-63). The medical examiner testified that such injuries are frequently found on persons who commit stabbings because "[b]lood is slippery," and "if an assailant is holding a knife and is inflicting stab wounds, . . . . the hand will come off of the handle, slide down on to the blade[,] and there will be cuts either on palm of the hand, the web of the thumb, middle finger[,] or at the base of the fingers where the knife is being gripped." (*Id.* at 498-99).

## III. Standards of Review

### A. AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Jones's convictions and sentences, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When

a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.      Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).

6

A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.  Ineffective Assistance of Counsel

Mr. Jones alleges ineffective assistance of trial and appellate counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Jones must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Jones must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Mr.

Jones must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## IV.    Discussion

### A.    Ground One—Denial of Motion for Mistrial

Mr. Jones contends that the trial court violated his federal constitutional rights by "refusing to grant his motion for a mistrial after the prosecutor made inappropriate remarks during closing arguments." (Doc. 1 at 4). The prosecutor began her closing argument as follows:

> It was just after 1:00 in the morning, July 21, 2013. Juanita Jones, 57 years old at the time[,] lay dying on her floor bleeding to death from the nine stab wounds inflicted on her during his brutal attack. This man, Tommy Jones, is the one that committed that attack on Juanita. And as she lay there dying the last thing she saw were her two sons, Floyd O'Hara and Joaquin—

(Doc. 15-2, Ex. 5, at 613-14). At this point, Mr. Jones's counsel objected. (*Id.* at 614). The court sustained the objection, instructing the jury to "disregard that comment." (*Id.*) During the ensuing bench conference, counsel "ask[ed] for a mistrial." (*Id.*) The court denied the motion but instructed the prosecutor to avoid "attribut[ing] anything to what [Mrs. Jones] saw, heard, felt at that point." (*Id.*)

According to Mr. Jones, the prosecutor's remarks "invited the jury to reach its verdict based on sympathy or emotion." (Doc. 1 at 4). Thus, Mr. Jones argues, the denial of his motion for mistrial "violated his constitutional due process right to a fair trial before an impartial jury." (*Id.*)

Respondent correctly contends that this claim is unexhausted and procedurally defaulted. (Doc. 15 at 10). Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly

present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Mr. Jones failed to present his federal constitutional claim on direct appeal. In his initial brief, Mr. Jones argued that the trial court "erred by refusing to grant [his] motion for mistrial" because the prosecutor's allegedly improper remarks "may have influenced the jury to reach a more severe verdict than it would have otherwise reached." (Doc. 15-2, Ex. 15, at 10). But Mr. Jones did not cite the United States Constitution or any other source of federal law. Nor did he "label[] the claim 'federal.'" *Baldwin*, 541 U.S. at 32. Instead, Mr. Jones relied entirely on Florida caselaw to support his argument that a mistrial should have been declared. (Doc. 15-2, Ex. 15, at 10-13). Because Mr. Jones did not "make the state court aware that the claim[] present[ed] federal constitutional issues," he failed to exhaust his state-court remedies as to Ground One. *Jimenez*, 481 F.3d at 1342; *see also O'Brien v. Sec'y*, No. 1:10-cv-189-MP-GRJ, 2013 WL 5460578, at *7 (N.D. Fla. Sept. 27, 2013) (holding that petitioner failed to exhaust "federal constitutional claim" concerning improper closing argument because "appellate counsel cited only state cases in support of the appellate arguments, and there is no mention in the brief of any federal constitutional claim with respect to this issue").

Mr. Jones cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground One is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will

bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Mr. Jones seeks to excuse the default on the ground that his appellate counsel was ineffective for failing to "federalize [his] claims at the [s]tate level." (Doc. 18 at 7). But a "claim of ineffective assistance" must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Because Mr. Jones did not "raise his ineffective-assistance-of-appellate-counsel claim in state court, he has failed to exhaust (and thus cannot now press) his only argument for cause." *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020). Accordingly, Mr. Jones has not shown that an exception applies to overcome the default, and Ground One is barred from federal habeas review.

### B.    Ground Two—Jury Instructions on First-Degree Murder

Mr. Jones contends that the trial court violated his federal constitutional rights "by presenting fundamentally flawed instructions to the jury on the offense of first[-]degree murder." (Doc. 1 at 5). In particular, the instructions allegedly (1) "failed to instruct the jury that it was the State's burden to demonstrate the killing of Mrs. Jones was not done in the heat of passion," and (2) failed to set forth "the proper standard for evaluating the heat of passion issue." (*Id.*)

Respondent is correct that this claim is unexhausted and procedurally defaulted. (Doc. 15 at 11-12). On direct appeal, Mr. Jones argued that the first-degree-murder instructions were "fundamentally flawed" for the reasons identified in Ground Two. (Doc. 15-2, Ex. 15, at 15). But he did not contend that, as a result of the allegedly flawed

instructions, his federal constitutional rights were violated. Nor did he cite the United States Constitution or any other source of federal law. (*Id.* at 14-24). "Under these circumstances, [Mr. Jones] cannot be said to have fairly apprised the state court of his federal . . . claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015); *see also Jones v. Buss*, No. 3:09-cv-12-MCR-EMT, 2011 WL 2784607, at *20 (N.D. Fla. June 13, 2011) ("If Petitioner wished to claim that the trial court's jury instructions denied him the due process of law guaranteed by the Fifth, Sixth, and Fourteenth Amendments, he should have said so in his state court brief."), *adopted by* 2011 WL 2746316 (N.D. Fla. July 14, 2011).

Mr. Jones cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). Thus, Ground Two is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Jones again seeks to excuse the default on the ground that appellate counsel was ineffective for "fail[ing] to cite federal case law in his [s]tate appellate brief, or to mention 'federal' within . . . the claim." (Doc. 18 at 7). But, as explained above, "[a] showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause'" only if "the ineffective-assistance claim itself is both exhausted and not procedurally defaulted." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020). Mr. Jones never raised his ineffective-assistance-of-appellate-counsel claim in state court. Accordingly, he cannot overcome the default of his claim of instructional error, and Ground Two is barred from review.

**C.     Ground   Three—Failure   to   Challenge   Attempted-Manslaughter Instructions on Direct Appeal**

Mr. Jones contends that appellate counsel was ineffective for failing to argue on direct appeal that the jury instructions on attempted manslaughter were "fundamentally erroneous." (Doc. 1 at 6). The instructions stated that, to "prove the crime of attempted manslaughter by act, the State must prove . . . beyond a reasonable doubt" that Mr. Jones "intentionally committed an act that would have resulted in the death of Joaquin Jackson except that someone prevented [him] from killing Joaquin Jackson or he failed to do so."[2] (Doc. 15-2, Ex. 5, at 650). Mr. Jones's trial counsel did not object to the instructions, and appellate counsel did not raise the issue on direct appeal.

In his federal habeas petition, Mr. Jones contends that the attempted-manslaughter instructions erroneously required the jury to find that he "intended to kill the victim." (Doc. 1 at 6). Mr. Jones raised this claim in his petition alleging ineffective assistance of appellate counsel. Specifically, he argued that appellate counsel "rendered ineffective assistance" by failing to argue that "the trial court committed fundamental error by charging the jury with the erroneous attempted[-]manslaughter jury instruction." (Doc. 15-2, Ex. 21, at 5). The state appellate court rejected Mr. Jones's claim without explanation. (*Id.*, Ex. 22).

Mr. Jones is not entitled to relief on Ground Three. As noted above, Mr. Jones's trial counsel did not object to the attempted-manslaughter instructions. Thus, the claim for ineffective assistance of *appellate* counsel turns on whether the alleged error was "fundamental" under Florida law. If the alleged error was "not fundamental, then [Mr.

---

[2] As described above, Mr. Jones stabbed Mr. Jackson in the head while the latter attempted to subdue him.

Jones's] appellate counsel would have been procedurally barred from raising it on appeal, and so he could not have been ineffective for failing to raise it." *Scott v. Sec'y, Dep't of Corr.*, 857 F. App'x 548, 551 (11th Cir. 2021); *see also State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991) ("Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred.").

By rejecting Mr. Jones's ineffective-assistance claim in an unelaborated order, the state appellate court "implicitly" determined that the attempted-manslaughter instructions were not fundamentally erroneous. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (holding that, "[b]ecause the Florida Second District Court of Appeal denied [petitioner's] state habeas petition" without explanation, "the Florida court has already determined, albeit implicitly, that the error was not fundamental error"). "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." *Id.* at 1299. Accordingly, this Court "must defer to the [state] court's underlying determination[]" that the attempted-manslaughter instructions were not fundamentally erroneous. *Id.* at 1297-98. Because the instructions did not constitute fundamental error, "appellate counsel would have been procedurally barred from [challenging them] on appeal." *Scott*, 857 F. App'x at 551. Counsel "will not be held to have performed deficiently" where, as here, he "fail[s] to perform a futile act, one that would not have gotten his client any relief." *Pinkney*, 876 F.3d at 1297.

Even if the issue of fundamental error were the Court's to decide, Mr. Jones would not be entitled to relief. "Fundamental error in a jury instruction requires that the error reach down into the validity of the trial itself to the extent that a verdict of guilty could not

have been obtained without the assistance of the alleged error." *Victorino v. State*, 23 So. 3d 87, 101 (Fla. 2009). Mr. Jones fails to show any error in the attempted-manslaughter instructions, much less fundamental error.

Contrary to Mr. Jones's assertion, the trial court did not instruct the jury that attempted manslaughter requires an intent to kill. Mr. Jones cites *Williams v. State*, 123 So. 3d 23 (Fla. 2013), a Florida Supreme Court case that rejected an earlier pattern instruction for attempted manslaughter. (Doc. 1 at 6). The instruction in *Williams* required the jury to find that the defendant "committed an act which was intended to cause the death of" the victim. *Williams*, 123 So. 3d at 25. But the trial court in Mr. Jones's case did not give that erroneous instruction. Instead, it tracked the post-*Williams* pattern instruction, which correctly requires an intentional act, not an intent to kill. *See In re Standard Jury Instructions In Crim. Cases--Instruction 6.6*, 132 So. 3d 1124, 1125-26 (Fla. 2014) (authorizing, in light of *Williams*, the use of an attempted-manslaughter instruction that requires a finding that defendant "intentionally committed an act" that "would have resulted in the death of" the victim). Because the attempted-manslaughter instructions in this case were proper, appellate counsel was not ineffective for failing to challenge them on direct appeal. Thus, Ground Three is denied.

## D.    Ground Four—Failure to Impeach Witnesses with Prior Inconsistent Statements

Mr. Jones argues that trial counsel was ineffective for failing to impeach Mr. O'Hara with his "prior inconsistent statements." (Doc. 1 at 8). Specifically, Mr. Jones contends that Mr. O'Hara testified inconsistently at his deposition and at trial as to whether he saw Mr.

Jones stab Mrs. Jones. (Doc. 15-2, Ex. 25, at 9-10). According to Mr. Jones, Mr. O'Hara stated at his deposition that he did not witness the stabbing, whereas at trial he claimed to "have seen [Mr. Jones] in a 'stabbing motion' toward his mother." (*Id.*)

The state postconviction court rejected this claim, explaining that it rested on "a mischaracterization" of Mr. O'Hara's deposition testimony. (*Id.*, Ex. 26, at 9). During his deposition, Mr. O'Hara initially testified that, when Mr. Jones "[w]alk[ed] toward" Mrs. Jones, he did not "see [Mr. Jones] stab at that time." (*Id.*) But on cross-examination, Mr. O'Hara clarified that he did see Mr. Jones make a "lunging motion" toward Mrs. Jones with a knife. (*Id.* at 9-10). The court concluded that Mr. O'Hara's deposition testimony was "consistent with the testimony given at trial, where [he] stated: 'I hear my mom make a noise and I ran over there, and like—as—like when I got up and I ran I seen him—I seen him in a stabbing motion and I was like—'" (*Id.* at 10). Accordingly, because the "statement[s] [were] consistent," the court held that "[t]rial counsel had no grounds to impeach" Mr. O'Hara. (*Id.*)

The rejection of this claim was reasonable. Whether Mr. O'Hara's deposition testimony qualified as a "prior inconsistent statement is an issue of state law, and a state court's determination of state law receives deference in federal court." *Miller v. Sec'y, Dep't of Corr.*, No. 8:17-cv-2815-TPB-AEP, 2020 WL 7318967, at *34 (M.D. Fla. Dec. 11, 2020), *aff'd*, No. 21-10077, 2022 WL 3452468 (11th Cir. Aug. 18, 2022); *see also Pinkney*, 876 F.3d at 1295 ("[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law."). The state

postconviction court reasonably concluded that, both at trial and during his deposition, Mr. O'Hara testified that he saw Mr. Jones make a stabbing motion toward Mrs. Jones with a knife. (Doc. 15-2, Ex. 26, at 10). Because Mr. O'Hara's statements were consistent, he could not have been impeached on this basis. As a result, the state postconviction court reasonably rejected Mr. Jones's ineffective-assistance claim. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *Stratis v. Sec'y, Dep't of Corr.*, No. 8:16-cv-141-CEH-AAS, 2019 WL 1330835, at *6 (M.D. Fla. Mar. 25, 2019) ("[C]ounsel was not ineffective in failing to impeach [state witness] on this issue because her trial testimony was not inconsistent with her deposition testimony.").

Mr. Jones separately contends that trial counsel was ineffective for failing to impeach Ms. Mitchell with her "prior inconsistent statements." (Doc. 1 at 8). According to Mr. Jones, Ms. Mitchell testified inconsistently at her deposition and at trial as to whether she could tell that Mr. Jones was drinking alcohol on the night of the stabbing. (Doc. 15-2, Ex. 25, at 6-9). During her deposition, Ms. Mitchell testified that, on the night in question, she could not "tell" whether Mr. Jones had been drinking. (*Id.*, Ex. 26, at 6). She explained that, when she "thought about it[] afterwards," she came to believe that he "probably" had been "drinking." (*Id.* at 7). At trial, however, Ms. Mitchell claimed that, on the night of the stabbing, she could "smell" alcohol on Mr. Jones. (*Id.*)

The state postconviction court rejected this claim. It acknowledged that Ms. Mitchell's testimony was "inconsistent" on this point. (*Id.*) The court found, however, that Mr. Jones failed to establish "prejudice" from counsel's failure to impeach Ms. Mitchell.

17

(*Id.*) The court noted that Ms. Mitchell's testimony was "largely consistent" and "supported by the forensic evidence." (*Id.*) Moreover, Mr. O'Hara "testified that while he did not observe [Mr. Jones] drinking that night, he could smell alcohol on his person." (*Id.* at 8). Thus, according to the court, "even if [Ms. Mitchell's] credibility as to this singular issue was questioned, the jury was still presented with the same unrefuted testimony from" Mr. O'Hara. (*Id.*) The court also observed that, during closing argument, Mr. Jones's counsel "attempted to use the fact that evidence indicated [he] had been drinking for the purpose of arguing [he] could not have formed the intent to commit premeditated murder." (*Id.*) As a result, "[i]mpeaching [Ms. Mitchell] as to this point would undermine this defense." (*Id.*)

The state postconviction court reasonably rejected this claim for lack of prejudice. To show prejudice under *Strickland*, Mr. Jones must "establish a reasonable probability that, but for counsel's [failure to impeach Ms. Mitchell], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014); *see also Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("Absent a showing of a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial, the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*."). Mr. Jones failed to meet his burden.

First, even apart from Ms. Mitchell's testimony, the prosecution presented overwhelming evidence of Mr. Jones's guilt. The evidence included testimony from Mr. O'Hara, who witnessed the stabbing, and from the medical examiner, who explained that Mrs. Jones was stabbed multiple times from behind. Given the substantial evidence of Mr. Jones's guilt, "there is not a reasonable probability that the outcome of the trial would have

been different had [] counsel impeached [Ms. Mitchell] with her prior" statements. *Broadwater v. United States*, 347 F. App'x 516, 520 (11th Cir. 2009). Second, even if the jury had disbelieved Ms. Mitchell's testimony that Mr. Jones was drinking on the night of the stabbing, the effect would have been minimal because Mr. O'Hara separately "testif[ied] to the[] same fact[]." *Ortiz v. Sec'y, Dep't of Corr.*, No. 8:06-cv-1021-JDW-TGW, 2009 WL 2224074, at *6 (M.D. Fla. July 23, 2009). Third, counsel argued in closing that Mr. Jones should be acquitted of first-degree murder because he "had been drinking" that night and thus could not form the required intent. (Doc. 15-2, Ex. 5, at 628). Had counsel sought to impeach Ms. Mitchell on this topic, he would have undermined a key component of his defense. Thus, the state postconviction court reasonably concluded that Mr. Jones was not prejudiced by counsel's failure to impeach Ms. Mitchell with her prior inconsistent statements.

Ground Four is denied.[3]

### E.      Ground Five—Failure to Present Expert Witness

Mr. Jones contends that trial counsel was ineffective for "failing to present an expert witness to prove [his] knife wounds were created while acting in self[-]defense." (Doc. 1 at 10). Mr. Jones asserts that "[a] forensic expert in knife wounds would have conclusively demonstrated that the injuries incurred by [him] were the direct result of defending himself

---

[3] In his Rule 3.850 motion, Mr. Jones also argued that Ms. Mitchell testified inconsistently as to whether Mr. Jones "reside[d]" at the house "while she was staying there." (Doc. 15-2, Ex. 25, at 8). The state postconviction court correctly rejected this claim as resting on "a mischaracterization" of Ms. Mitchell's "actual testimony." (*Id.*, Ex. 26, at 8). Specifically, both at her deposition and at trial, Ms. Mitchell testified that, although Mr. Jones did not live in the house when she first moved in, he eventually came to share the residence with her and several other people. (*Id.*)

and not a result of his hand sliding down the knife during the stabbing of the victim as alleged by" the State's medical examiner. (*Id.* at 10-11). According to Mr. Jones, the failure to "present an expert in forensic knife wounds deprived [him of] an opportunity to refute the testimony offered by the State's expert witness, as well as an opportunity to demonstrate that he did act in self[-]defense." (*Id.* at 11).

The state postconviction court rejected this claim. It began by noting that "the trial was devoid of any evidence that [Mr. Jones] might have acted in self-defense." (Doc. 15-2, Ex. 26, at 11). Specifically, the evidence showed that (1) Mrs. Jones "did not make any noise until after [Mr. Jones] began stabbing her," (2) Mr. Jones stabbed the victim multiple times, "with all wounds in a direction consistent with [him] reaching around from behind [her]," and (3) Mr. Jones subsequently stabbed Mr. O'Hara, "locking the door and preventing him from leaving the residence." (*Id.*) The court also highlighted the medical examiner's testimony that Mr. Jones's "injury was caused while he stabbed others, and not as a defensive wound." (*Id.* at 11-12). In the court's view, Mr. Jones's "unfounded claim that some unknown expert would contradict the testimony of the witnesses and all of the evidence [was] based entirely on his hopeful speculation." (*Id.* at 12).

The rejection of this claim was reasonable. The burden of establishing prejudice under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021). For that reason, "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure

to interview or call that witness." *Id.* Here, Mr. Jones merely speculates that a forensic expert in "knife wounds" would have testified that the physical evidence supported his claim of self-defense. (Doc. 1 at 10-11). Significantly, he does not identify "a single [] expert who was prepared to come into court and say that." *Cardona v. Dixon*, No. 19-81567-CIV, 2022 WL 2158715, at *13 (S.D. Fla. June 14, 2022). Because there is no basis to conclude that an expert would have provided helpful testimony, the state postconviction court reasonably rejected Mr. Jones's ineffective-assistance claim. *See Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007) ("[Petitioner's] claim that an expert witness would have prompted the jury to believe his testimony . . . is conclusory and speculative, and does not amount to a showing of prejudice."). Thus, Ground Five is denied.

### F.     Ground Six—Failure to Present "Any Defense"

Mr. Jones argues that trial counsel "rendered ineffective assistance by failing to subject the State's case to any meaningful adversarial testing." (Doc. 1 at 12). According to Mr. Jones, counsel conducted "no pretrial investigation" and presented "no defense" at trial, opting instead for a "do[-]nothing strategy." (*Id.* at 12-13). In addition, Mr. Jones faults counsel for failing to pursue a claim of self-defense. (*Id.*)

The state postconviction court rejected this claim. It noted that Mr. Jones had failed to describe the "specific ways trial counsel failed to test the State's case." (Doc. 15-2, Ex. 26, at 12). Instead, Mr. Jones relied on *United States v. Cronic*, 466 U.S. 648 (1984), "to claim trial counsel's alleged failures in this ground amount[ed] to presumptive prejudice." (*Id.*) The court noted that *Cronic* "is reserved for situations where the assistance of counsel has been denied entirely or withheld during a critical stage of the proceeding such that the

likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." (*Id.* (citation omitted)). Applying this standard, the court held that Mr. Jones "was not deprived of the assistance of counsel during trial." The court pointed out that counsel "cross-examined several witnesses, lodged objections, and made both opening and closing arguments." (*Id.*) Moreover, "[d]uring closing arguments, trial counsel argued it could be possible [Mr. Jones] suffered the injury to his hand by grabbing the knife away from [Mrs. Jones]; that [Mr. Jones] did not act with premeditation due to a moment of heat of passion; that [Mr. Jones] did not form premeditation as he was intoxicated; and that [Mr. Jones] did not act with ill will, hatred, spite, or evil intent." (*Id.* at 12-13). Thus, the court concluded that Mr. Jones could not "rely upon any presumptive prejudice [under *Cronic*], and must sufficiently allege both deficiency and prejudice in accordance with *Strickland*." (*Id.* at 13).

The court also found that "[a]ny failure on the part of trial counsel to present a further defense was clearly based on [Mr. Jones's] decision" not to testify at trial, "and not through any fault of trial counsel." (*Id.*) In support, the court cited the following colloquy between Mr. Jones and the trial court:

> THE COURT: Okay. When we left just before the noon hour I had gone over with Mr. Jones his right to take the stand and his equal right not to take the stand. I wanted to give him the opportunity to thin[k] about it, talk to his attorney about it, but again, it's ultimately your decision, Mr. Jones. Have you made a decision as to how you want to proceed, sir?
>
> THE DEFENDANT: Yes. Not take it. I'm not taking the stand.
>
> THE COURT: You're not going to testify?
>
> THE DEFENDANT: No.

22

THE COURT: And as a result of that what I will do is I will advise the jury that that is your right and they cannot use that against you in any way as I've been doing through the course of the trial. Let me just ask this. Has anybody threatened, coerced or forced you into making the decision you've made not to testify?

THE DEFENDANT: I think—I think personally it's in my best interest.

THE COURT: Okay. So—

THE DEFENDANT: Due to some things me and him talked about.

THE COURT: But this is your ultimate decision.

THE DEFENDANT: Yes, sir.

THE COURT: This is one of those instances that it's ultimately your decision as to whether or not you want to take the stand.

THE DEFENDANT: I understand.

. . .

[DEFENSE COUNSEL]: I've advised too—I've advised Mr. Jones that it would in his better interest in taking the stand notwithstanding the fact that there would be testimony regarding felony—being a felony offender and having 11 priors. In order to put on our defense, it would be essential for Mr. Jones to testify, however, as the Court knows ultimately it is Mr. Jones' decision and this is his decision, and it's against the advice of counsel.

THE COURT: Okay. Again, Mr. Jones, I know you've had an opportunity to talk to your attorney, and under our system this is one of those areas that it's ultimately the person's specific personal decision and it's my understanding that your decision is that you are not taking the stand.

THE DEFENDANT: Yes.

(*Id.*, Ex. 5, at 597-99). Later in the colloquy, the trial court explained to Mr. Jones that if he declined to testify, the self-defense instruction would not "be given to the jury." (*Id.* at 602-03).

The state postconviction court acted reasonably in rejecting Mr. Jones's allegations of ineffective assistance. First, the court correctly declined to apply *Cronic* to Mr. Jones's claim. As relevant here, *Cronic* "applies only where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1287 (11th Cir. 2013) (emphasis omitted). In other words, *Cronic* is "reserved for situations in which counsel has entirely failed to function as the client's advocate by failing to meaningfully oppose the prosecution's case." *Id.* (emphasis omitted). Thus, under *Cronic*, "counsel's failure to test the prosecution's case must be *complete*." *Id.* Here, as the state postconviction court explained, counsel "cross-examined several witnesses, lodged objections, and made both opening and closing arguments." (Doc. 15-2, Ex. 26, at 12). Counsel also urged the jury to find that Mr. Jones did not act with the intent required for first-degree murder or attempted second-degree murder. (*Id.*) Because "counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing," *Cronic* is inapplicable here. *Castillo*, 722 F.3d at 1287; *see also Rogers v. Sec'y, Dep't of Corr.*, No. 8:17-cv-2680-VMC-SPF, 2019 WL 2646544, at *11 n.11 (M.D. Fla. June 27, 2019) (holding that "*Cronic* [was] inapplicable" because counsel "made opening and closing arguments, cross-examined witnesses, challenged the States' proposed jury instructions, moved for a judgment of acquittal, and made objections during the trial"), *aff'd*, 829 F. App'x 437 (11th Cir. 2020).

Second, the state postconviction court reasonably found that, to the extent counsel did not "present more of a defense" at trial, the cause was Mr. Jones's decision not to testify rather than "any fault of trial counsel." (Doc. 15-2, Ex. 26, at 13). As the colloquy quoted

24

above makes clear, Mr. Jones chose not to testify against the advice of counsel, who believed that his client's testimony was necessary "[i]n order to put on our defense." (*Id.*, Ex. 5, at 598-99). In his reply, Mr. Jones maintains that counsel "had ample opportunity to present" other "evidence and testimony to support this avenue of defense," but "entirely failed" to do so. (Doc. 18 at 16). Yet Mr. Jones offers no specifics about the "evidence and testimony" that allegedly would have supported his claim of self-defense. "[I]neffective assistance of counsel cannot be proven via conclusory assertion." *Wilson v. Sec'y, Fla. Dep't of Corr.*, 769 F. App'x 825, 827 (11th Cir. 2019); *see also Moss v. United States*, No. 8:06-cr-464-EAK-TGW, 2010 WL 4056032, at *11 (M.D. Fla. Oct. 15, 2010) (rejecting ineffective-assistance claim because petitioner failed to "reveal what investigation should have been conducted by his counsel nor d[id] he discuss any details about what . . . would have been revealed had an investigation been conducted").

For all these reasons, Ground Six is denied.

### G.    Ground Seven—Failure to Object to "Golden Rule" Violation

Mr. Jones contends that trial counsel was ineffective for failing to object to the prosecutor's "golden rule violation" during opening statements. (Doc. 1 at 14). Florida law prohibits golden-rule arguments, defined as "requests that the jurors place themselves in the victim's position, that they imagine the victim's pain and terror, or that they imagine that their relative was the victim." *Pagan v. State*, 830 So. 2d 792, 812 (Fla. 2002). Toward the beginning of her opening statement, the prosecutor made the following remarks: "And as she lay there dying likely the last thing that she saw was her two sons, Floyd O'Hara and Joaquin Jackson fighting Tommy Jones, struggling with him trying to get that knife

away from Tommy Jones so that he couldn't hurt anybody else in that house that night, and that's last—likely the last thing she saw as she lay there taking her last breaths." (Doc. 15-2, Ex. 5, at 208-09). Mr. Jones's counsel did not object, but when the prosecutor made similar remarks during her closing statement, counsel objected and unsuccessfully sought a mistrial. (*Id.* at 613-14).

Mr. Jones contends that the prosecutor's remarks during her opening statement "should have triggered an immediate objection as a golden rule violation," and that had counsel objected, the court "would have had no choice but to seat another jury in order to ensure that [Mr. Jones] would have received a fair trial." (Doc. 1 at 15).

The state postconviction court rejected this claim. It first found that the challenged remarks were "proper" and did not constitute a "'golden rule' violation." (Doc. 15-2, Ex. 26, at 14). The court reasoned that, based on the "testimony presented at trial, it was fair for the prosecutor to have believed the evidence would have established this was the last thing [Mrs. Jones] saw before she died." (*Id.*) The court also explained that the comments did not "invite[]" the jurors "to place themselves in [Mrs. Jones's] position." (*Id.*) Furthermore, the court held that Mr. Jones's "claim of prejudice" from the alleged golden-rule violation was "based purely on speculation," and that he had "not offered any substantive reason as to why a mistrial would have been granted during opening statements, when the same request was denied during closing arguments." (*Id.* at 15).

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns

on state law." *Pinkney*, 876 F.3d at 1295. Here, the state court found that no objection was warranted because, as a matter of Florida law, the challenged statements were not a golden-rule violation. (Doc. 15-2, Ex. 26, at 14). Thus, the state court "already has told us how the issues would have been resolved under state law had [counsel] done what [Mr. Jones] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See Mansell v. Sec'y, Dep't of Corr.*, No. 8:18-cv-1307-KKM-SPF, 2021 WL 4340419, at *15 (M.D. Fla. Sept. 23, 2021) ("The state court determined that no objection was warranted because the statement was not a golden rule violation under state law. This Court must defer to that determination of state law.").

Even assuming that the challenged remarks constituted a golden-rule violation, the ineffective-assistance claim still fails because Mr. Jones cannot show prejudice. As explained above, the prosecution presented overwhelming evidence of Mr. Jones's guilt. And when the prosecutor made similar remarks during closing argument, the court denied defense counsel's motion for a mistrial. As a result, even if counsel had objected to the allegedly improper remarks, there is not "a reasonable probability" that "the outcome at trial would have been different." *Reed*, 767 F.3d at 1261; *see also Elrod v. Sec'y, Dep't of Corr.*, No. 8:11-cv-1777-JDW-MAP, 2014 WL 3687243, at *7 (M.D. Fla. July 24, 2014) (holding that, "[i]n light of the overwhelming evidence" of petitioner's guilt, he had "not shown a reasonable probability that the result of the trial would have been different had counsel objected to the [golden-rule] comment"). Accordingly, Ground Seven is denied.

### H.      Ground Eight—Failure to Present Evidence of Self-Defense

Mr. Jones contends that trial counsel was ineffective for "failing to present any evidence and testimony to support a theory of self[-]defense." (Doc. 1 at 16). Specifically, he complains that counsel "wholly failed to present any witnesses (expert or factual) or any evidence (physical or testimonial) to support" a claim of self-defense. (*Id.*) As a result, Mr. Jones says, counsel "simply allowed the State to present their case and then sit back and watch the jury return a guilty verdict." (*Id.* at 17). The state postconviction court rejected this claim, reasoning that (1) Mr. Jones failed to "cite what evidence or testimony trial counsel should have presented," and (2) "trial counsel was unable to present a theory of self-defense based on [Mr. Jones's] decision—against trial counsel's advice—to not testify." (Doc. 15-2, Ex. 26, at 16).

The rejection of this claim was reasonable. As noted above, "ineffective assistance of counsel cannot be proven via conclusory assertion." *Wilson*, 769 F. App'x at 827. Mr. Jones fails to provide any information about the "witnesses" or "evidence" that he claims counsel should have presented at trial. (Doc. 1 at 16). Because Mr. Jones "has not stated with specificity what evidence or witnesses . . . defense counsel should have presented," his "assertion that defense counsel was ineffective for failure to introduce unidentified evidence and witnesses . . . is purely speculative."[4] *Borden v. United States*, No. 6:09-cv-481-GAP-DAB, 2010 WL 2803969, at *9 (M.D. Fla. July 15, 2010); *see also Aldrich v.*

---

[4] Mr. Jones elsewhere contends that counsel should have retained a forensic expert on "knife wounds." (Doc. 1 at 11). As explained above, however, Mr. Jones fails to establish that such an expert would have testified favorably to the defense.

*Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("[S]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation."). Furthermore, as explained above, counsel could not pursue a claim of self-defense because Mr. Jones—against counsel's advice—waived his right to testify at trial. In these circumstances, the state postconviction court reasonably concluded that counsel did not perform deficiently with respect to any potential claim of self-defense. Ground Eight is denied.

## I.    Ground Nine—Failure to Seek Stand-Your-Ground Hearing

Mr. Jones argues that trial counsel was ineffective for failing to file a "pretrial motion" for a stand-your-ground "immunity hearing." (Doc. 1 at 18). Shortly before Mr. Jones's trial, the Florida legislature amended the stand-your-ground statute. The law previously required defendants to "to prove 'by a preponderance of the evidence' that [they were] immune from prosecution." *State v. Gallo*, 76 So. 3d 407, 409 & n.2 (Fla. 2d DCA 2011). Under the amended statute, "a defendant is no longer required to prove that he or she acted in self-defense by a preponderance of the evidence at an immunity hearing; instead, a defendant need only make a prima facie showing at that point." *Boston v. State*, 326 So. 3d 673, 675 (Fla. 2021). Then, "[t]o defeat the claim of immunity, the State must prove by clear and convincing evidence that the defendant did not act in self-defense." *Id.*

Mr. Jones contends that counsel should have taken advantage of this "favorable change" in the law by "fil[ing] a pretrial motion" for a stand-your-ground immunity hearing. (Doc. 1 at 18). Counsel's failure to do so allegedly "deprived [Mr. Jones] of a legitimate opportunity to be acquitted before the start of trial and simply amounted to

nothing more than his inattention to a favorable defense opportunity for his client." (*Id.*) The state postconviction court rejected this claim on the ground that Mr. Jones "would not have been able to prevail on such a motion." (Doc. 15-2, Ex. 26, at 16). The court reasoned that "[t]he State would have met its burden by presenting the same testimony and evidence presented at trial," and there was "no reason to conclude [Mr. Jones] would have testified at a pre-trial hearing, contrary to his decision made during trial." (*Id.*)

The rejection of this claim was reasonable. As noted above, "although the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney*, 876 F.3d at 1295. Here, the state court found that counsel was not ineffective for failing to file a stand-your-ground motion because, under Florida law, Mr. Jones "would not have been able to prevail on such a motion." (Doc. 15-2, Ex. 26, at 16). This Court must defer to the state court's determination that a stand-your-ground motion would have been unsuccessful. *See McCoy v. Inch*, No. 5:20-cv-283-TKW-EMT, 2021 WL 4507481, at *14 (N.D. Fla. Aug. 2, 2021) ("Here, the state court already answered the question of whether a motion to dismiss, based upon 'Stand Your Ground' immunity, would have been successful under Florida law—it would not have been. This court must defer to the state court's determination of state law."), *adopted by* 2021 WL 4503366 (N.D. Fla. Oct. 1, 2021); *Garcia v. Sec'y, Dep't of Corr.*, No. 8:17-cv-2374-KKM-AAS, 2021 WL 1516070, at *7 (M.D. Fla. Apr. 16, 2021) ("The underlying question of whether a motion to dismiss under Florida's Stand Your Ground law would have succeeded is a matter of state law. This Court must defer to the state court's determination that a motion

to dismiss would not have been granted."). Accordingly, because a stand-your-ground motion had no chance of success, counsel was not ineffective for failing to file one. Ground Nine is denied.

### J.      Ground Ten—Failure to Request Additional Instructions on Heat-of-Passion Defense

Finally, Mr. Jones contends that trial counsel was ineffective for failing to "request that the trial court advise the jury that the State was required to carry the burden of proof" on the heat-of-passion defense. (Doc. 1 at 20). The court instructed the jury that "[a]n issue in this case [is] whether [Mr. Jones] did not act with premeditated design to kill because he acted in the heat of passion based on adequate provocation." (Doc. 15-2, Ex. 5, at 643). After setting out the elements of the heat-of-passion defense, the court explained that, "[i]f you have a reasonable doubt about whether [Mr. Jones] acted with premeditated design to kill because he acted in the heat of passion based on adequate provocation, you should not find him guilty of first-degree premeditated murder."[5] (*Id.* at 643-44).

During deliberations, the jury sent back the following questions: (1) "Could we have a definition of 'heat of passion'?" and (2) "Is it the state ~~bured~~ has to prove [*sic*]?" (*Id.*, Ex. 6). The prosecutor proposed "just sending a note back advising them [to] see" the relevant portions of "the jury instructions." (*Id.*, Ex. 5, at 672). Mr. Jones's counsel said he had "no objection to that." (*Id.*) The court thus advised the jury that "the instruction concerning heat

---

[5] The court gave similar instructions on the heat-of-passion defense as it applied to second-degree murder and attempted second-degree murder. (Doc. 15-2, Ex. 5 at 645-46, 648-49).

of passion is contained in the latter portion of the instructions on murder first-degree, attempted second-degree murder and the lesser of murder, second-degree." (*Id.* at 676).

Mr. Jones contends that counsel "should have objected and argued insistently for the court to answer the jury's questions effectively and instruct the jury properly." (Doc. 1 at 20). According to him, the instructions were "fundamentally flawed" because they suggested that "the State carried no burden with respect to the heat of passion issue." (*Id.* at 21).

The state postconviction court rejected this claim, finding that "[t]he jury was properly instructed regarding heat of passion." (Doc. 15-2, Ex. 26, at 17). The court determined that the trial court's answer to the jury's questions "was not improper" because the instructions "properly informed the jury on the definition of heat of passion, and who carrie[d] the burden." (*Id.*) The court also noted that the jury was "properly instructed" that Mr. Jones was "not required to present evidence or prove anything." (*Id.*) Finally, the court rejected as "speculat[ive]" Mr. Jones's "claim that an alternative proposed instruction would have resulted in a different" outcome at trial. (*Id.*)

The state postconviction court reasonably rejected this claim. Its determination that counsel was not ineffective rested on a finding that the jury instructions were proper under Florida law. "[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997). Thus, this Court must defer to the state court's conclusion that the jury instructions were proper. *See Bilotti v. Fla. Dep't of Corr.*, No. 22-cv-62068, 2023 WL 3159729, at *15 (S.D. Fla. Apr. 5, 2023) ("It is significant whether the state court's basis

for denying postconviction relief was that the jury instructions were correct as a matter of Florida law . . . because, if that was the basis for the state court's ruling, this Court would be required to defer to that ruling."), *adopted by* 2023 WL 3159301 (S.D. Fla. Apr. 29, 2023). And because the instructions were correct as a matter of Florida law, counsel was not ineffective for failing to propose alternative instructions in response to the jury's questions.

In any event, the heat-of-passion instructions tracked Florida's pattern instructions on that defense. (*Compare* Doc. 15-2, Ex. 5, at 643-46, 649, *with* Fla. Std. Jury Instr. (Crim.) §§ 6.4, 7.2). Counsel is not ineffective for declining to object to jury instructions that are consistent with the standard instructions approved by the Florida Supreme Court. *See Conrad v. Sec'y, Fla. Dep't of Corr.*, 663 F. App'x 746, 753 (11th Cir. 2016) (finding that petitioner failed to satisfy *Strickland*'s prejudice prong because "Florida precedent indicates that trial counsel's failure to object to standard jury instructions that had not been invalidated by the Florida Supreme Court do[es] not render counsel's performance deficient."); *see also Griffin v. State*, 866 So. 2d 1, 15 (Fla. 2003) ("[I]t is not deficient performance when counsel fails to object to a standard instruction which has not been invalidated by [the Florida Supreme] Court.").

For all these reasons, Ground Ten is denied.[6]

---

[6] Mr. Jones seeks an evidentiary hearing on his claims. (Doc. 1 at 24). The Court concludes that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

Accordingly, the Court **ORDERS**:

1. Mr. Jones's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Jones and to **CLOSE** this case.

3. Mr. Jones is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Jones must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Jones has not made the requisite showing. Because Mr. Jones is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on November 8, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE